UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| DENNY R. GIVENS )<br>(Social Security No. XXX-XX-9250), )<br>)<br>　　　　　　　Plaintiff, )<br>　　　　　　　　　　　　　　　　)<br>　　v. )<br>　　　　　　　　　　　　　　　　)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the )<br>Social Security Administration,[1] )<br>　　　　　　　　　　　　　　　　)<br>　　　　　　　Defendant. ) | 4:12-cv-44-WGH-RLY |

**ENTRY ON JUDICIAL REVIEW**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, upon the Consents filed by the parties (Docket Nos. 8, 10) and an Order of Reference entered by Chief Judge Richard L. Young on June 15, 2012 (Docket No. 12). Denny R. Givens ("Givens") is seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), which found him not disabled and not entitled to Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). 42 U.S.C. § 301 *et seq.*

For the reasons stated below, the Commissioner's decision must be **AFFIRMED.**

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is automatically substituted as the Defendant in this suit.

I.  **Background**

   A.  **Procedural History**

Givens was born on April 12, 1967. (R. at 14). During his school years, he was in special education classes, and he dropped out of high school in 1985, when he was in eleventh grade. (R. at 33, 299). He finished high school in 2005. (R. at 299). Givens applied for DIB on June 2, 2006, alleging a disability onset date of October 10, 2005, at which time he was 38 years old. (R. at 14, 70). His application was denied initially and upon reconsideration. (R. at 54-57, 59-65). On October 20, 2008, an Administrative Law Judge ("ALJ") held a hearing at which Givens and a vocational expert ("VE") testified. (R. at 30-51). On April 15, 2009, the ALJ issued an opinion finding that Givens was not disabled. (R. at 15). The Appeals Council denied review on December 11, 2009 (R. at 1-4), leaving the ALJ's decision as the Commissioner's final decision. 20 C.F.R. §§ 404.955(a), 404.981.

Givens filed suit in the United States District Court for the Southern District of Indiana on February 11, 2010, alleging that he was never provided with the vocational literature upon which the VE's opinion was based. He also claimed that the VE's testimony conflicted with SSR 83-12, and that the ALJ's decision was not supported by substantial evidence. (Plaintiff's Brief "Pl's Brief" at 2). The Commissioner agreed, and the case was remanded to the Social Security Agency on June 21, 2010. (R. at 342).

On September 29, 2010, the Appeals Council ordered a rehearing (R. at 349-50), which occurred on October 17, 2011, in front of a new ALJ (R. at 265).

2

Givens and a VE both testified at the rehearing. On December 20, 2011, the new ALJ again found that Givens was not disabled.[2] (R. at 274). The Appeals Council denied his request for review on August 4, 2012, making the new ALJ decision the final decision of the Commissioner. (R. at 252-55). Jurisdiction is proper in this court. 42 U.S.C. § 405(g).

### B. ALJ Findings

The ALJ's decision included the following findings: (1) Givens met DIB insured status through June 30, 2009, and he had not engaged in any substantial gainful activity since the alleged onset date of October 1, 2005 (R. at 267); (2) Givens suffered from the following impairments: degenerative disc disease of the lumbosacral spine, mild osteoarthritis of the knees, diabetes mellitus, and depression (R. at 267-68); (3) none of the impairments met or equaled the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 268-70); (4) Givens had a residual functional capacity ("RFC") to perform sedentary work with the following limitations: he could only occasionally climb ramps and stairs; he could only occasionally crouch, crawl, kneel, stoop, or balance; he could not climb ladders, ropes, or scaffolds; he could not drive equipment or work around hazards such as unprotected heights or moving machinery; he could only occasionally reach overhead or operate foot controls; he could frequently use his upper extremities for handling and fingering; and he was limited to performing unskilled, simple, repetitive tasks which would

---

[2] Any further reference to the ALJ or his decision refers to the decision dated December 20, 2011.

not involve rapid production pace work, focusing his attention for more than two hours at a time, or more than occasional interpersonal contact. (R. at 270-71); (5) he could not perform past relevant work (R. at 271-72); and (6) considering Givens's age, education, work experience, and RFC, there existed a significant number of jobs in the national economy he could perform. (R. at 273-74). Based on those findings, the ALJ concluded that Givens was not disabled. (R. at 274).

## II.   Legal Standards

In order to qualify for disability benefits, Givens must establish that he suffered from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To establish disability, the claimant must present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908, 404.1508.

The Social Security Regulations outline a five-step inquiry the ALJ is to perform in order to determine whether a claimant is disabled. The ALJ must

consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4). The burden of proof is on Givens during steps one through four, and only after Givens has met his burden on these steps does the burden shift to the Commissioner for step five. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation omitted); *see also Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty, not the court's, to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of creditability. *Richardson,* 402 U.S. at 399-400. Accordingly, the court may not re-evaluate the facts, reweigh the evidence, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).

### III.     Statement of Facts

The court concludes that the Statement of Facts proposed by the Commissioner most accurately reflects the record in this case and adopts that Statement of Facts in this opinion. (Defendant's Brief at 2-6.)

### IV.     Discussion

On appeal, Givens raises five issues: (1) whether the ALJ erred by rejecting the examining physician's opinions; (2) whether the ALJ improperly evaluated his credibility by using boilerplate language; (3) whether the ALJ violated SSR 02-1p by failing to discuss the effects Givens's obesity might have on his RFC; (4) whether the ALJ adequately accounted for his moderate difficulties with regard to concentration, persistence, and pace; and (5) whether the ALJ erred in evaluating the vocational evidence at step five.

#### A.     The ALJ properly weighed Dr. Wang's opinion.

Givens claims the ALJ erred when he failed to include a proper sit/stand option in his hypothetical to the VE because he assigned little weight to the opinion of Dr. Shuyan Wang ("Dr. Wang"), a Disability Determination Services ("DDS") examining physician. (R. at 272). Givens contends that the ALJ violated the "examining physician rule" because he gave greater weight to the opinion of Dr. Jennifer Corcoran ("Dr. Corcoran"), a non-examining physician. (R. at 271). The examining physician rule stands for the proposition that

generally an examining medical source opinion is given greater weight than a non-examining source. 20 C.F.R. § 404.1527(d)(1).[3] Like the treating physician rule,[4] a contradictory opinion by a non-examining physician does not suffice as substantial evidence for the ALJ to reject the examining physician's testimony. *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003). An ALJ's decision to reject the opinion of an examining physician must be supported by substantial evidence in the record. *Id.* Since he discounted Givens's credibility, the ALJ relied upon the medical evidence in the record to determine the value of Dr. Wang's and Dr. Corcoran's opinions. (R. at 271).

Givens's contention is erroneous. The ALJ did not ignore Dr. Wang's opinion, but rather considered it in light of all the other opinions and evidence in the record. The ALJ concluded that Dr. Wang's opinion was based only on Givens's allegations and complaints (R. at 272), and an ALJ may discount medical opinions based solely on the patient's subjective complaints. *Filius v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). The ALJ specifically noted that he gave little weight to the assessment provided by Dr. Wang because "the limitations listed in that assessment are not supported by the relatively modest level of change shown on the MRI studies of record." (R. at 272).

---

[3] When the ALJ made his decision on December 20, 2011, the "examining physician rule" was cited at 20 C.F.R. § 404.1527(d)(1). This opinion cites the regulations as they existed when the ALJ made his decision.

[4] The "treating physician rule" directs the ALJ to give controlling weight to the medical opinion of a claimant's treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2).

7

The ALJ also noted that neither of the MRI studies showed any nerve root compression or contact. (R. at 272). One of Givens's treating physicians, Dr. William Driehorst, reviewed Givens's MRI study from 2004, and found that the degenerative changes from L3-L4 in his thoracic spine were not marked, that he did not have marked nerve root impingement, and that the "underlying level of pathology. . .is not major." (R. at 160, 163-66). The results from Givens's MRI from 2008 only noted a "slight increase" in multilevel lumbar spondylosis at L3-L4, and that no definite nerve root impingement was visible. (R. at 496). Although Dr. Wang's opinion essentially eliminated Givens's ability to perform sedentary work, the ALJ found that the level of documented pathology shown on the imaging studies of the record is consistent with a physical ability to perform sedentary work with some limitations. *Id.*

The ALJ's decision not to give Dr. Wang's opinion substantial weight was not an improper medical determination, but rather the type of context consideration that judges regularly make when assessing the weight to attribute to conflicting evidence. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The ALJ's decision to disfavor the evidence submitted by Dr. Wang is supported by substantial evidence, and is not contradictory to the "examining physician rule."

### B. The ALJ properly evaluated Givens's credibility.

In evaluating Givens's credibility, the ALJ used the following boilerplate language:

> After careful consideration of the evidence, the undersigned finds
> that the claimant's medically determinable impairments could

> reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not credible to the extent they are consistent with the above residual functional capacity assessment.

(R. at 271). Givens contends that the ALJ erroneously used boilerplate language in his evaluation of Givens's credibility. Although such boilerplate language can be meaningless and unhelpful to a reviewing court, the standard of review remains that it "is only when the ALJ's determination lacks any explanation or support will [a court] declare it patently wrong and deserving of reversal." *Bjornson v. Astrue,* 671 F.3d 640, 645 (7th Cir. 2012)(citing *Parker v. Astrue,* 597 F.3d 920, 922 (7th Cir. 2010)); *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). The ALJ is in a unique position to assess a claimant's credibility, and his credibility finding should be given considerable deference. *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006). At the same time, the ALJ must also consider the claimant's level of pain, medication, treatment, daily activities, and limitations, and must justify the credibility finding with specific reasons supported by the record. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

Despite using the boilerplate language, the ALJ also conducted a thorough assessment of Givens's credibility. (R. at 270-72). He determined that Givens's allegations were not fully credible and gave his testimony little weight. He based this decision on numerous factors, including: (1) although

9

Givens claimed he suffered from significant depression, he received no regular mental health care[5]; (2) that contrary to Givens's claims of chronic pain, the imaging studies in the record reflected only mild to moderate changes in Givens's lumbosacral spine and wrists; (3) that Givens claimed he suffered from severe back pain, but he refused lumbar epidural injections to relieve the pain[6]; and (4) that contrary to Givens's testimony, one treating physician's opinion was that his back problem is "not major". (R. at 160, 271).

The ALJ also took into account the first ALJ's finding that Givens lacked credibility, which was supported by substantial evidence.[7] (R. at 271). The second ALJ did not err in relying upon the first ALJ's credibility finding because the first ALJ's finding is supported by substantial evidence in the record. Because the ALJ based Givens's credibility determination on both the objective medical record evidence and Givens's subjective complaints, his determination was not "patently wrong," and the ALJ's decision must be affirmed.

---

[5] Although Givens was taking a prescription medication for his depression, that medication was prescribed by his general physician; he had not been seen by a psychologist or psychiatrist on a regular basis. (R. at 293, 311).

[6] Although Givens claimed he had not sought treatment because he lacked insurance, he did not receive injections even after obtaining insurance. (R. at 143, 573, 604).

[7] After considering the objective medical evidence of the record, the first ALJ based his finding on the following factors: (1) that Givens complained he suffered from severe back pain, but a June 2004 radiographic study showed "minimal" disk protrusion at TI2-L1 on the left and L3-4 on the right, and "mild" disk degeneration L3-4, L2-3, and T12-L1; (2) that contrary to Givens's reports of pain in his back and shoulder, he reported that he took no medication; (3) that Givens claimed his pain had a detrimental effect on his ability to complete daily activities, but he was able to still drive once or twice per week, concentrate on watching television or playing board games, cook and clean around the house, go fishing, and do yard work. (R. at 13).

10

## C. The ALJ did not violate SSR 02-1p.

Givens claims that the ALJ violated SSR 02-1p[8] by failing to discuss the issue of Givens's obesity and any effect it may have on his RFC. Although SSR 02-1p instructs the ALJ to consider the effects of obesity, including when it is combined with other impairments, the regulations do not strictly require that the ALJ articulate in his written decision which functional limitations are attributable to obesity. 2000 WL 628049, at *1 (Sept. 12, 2002). It is the plaintiff who bears the burden of articulating how his obesity has limited his functioning and how it has aggravated his other impairments. *See Prochaska*, 454 F.3d at 736-37.

The ALJ did not explicitly discuss the effects of Givens's obesity on his other limitations when arriving at his RFC. However, the ALJ factored Givens's obesity "indirectly" into his analysis by basing Givens's RFC on the limitations identified by doctors who had taken into account Givens's obesity. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). At step two, the ALJ noted that the objective medical record supports a finding that Givens has

---

[8]  "…..we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity."

2000 WL 628049, at *1 (Sept. 12, 2002).

11

definite and measurable work limitations due to his obesity and other conditions. (R. at 268). At least five doctors noted that Givens was overweight or obese. (R. at 203, 223, 575, 596, 602). Dr. Wang noted that Givens was obese and had a Body Mass Index of 40. (R. at 575). Dr. Corcoran listed obesity as one of Givens's alleged conditions, and she also included Givens's height (70") and weight (273.2 lbs.). (R. at 232). The ALJ relied on Dr. Wang's report and Dr. Corcoran's opinion when making his RFC assessment. (R. at 270-72). Although both physicians noted Givens's obesity, neither physician identified any limitations that were directly attributable to Givens's obesity or its effects in their assessments. (R. at 231-38; 578).

Furthermore, Givens did not articulate how his obesity affected his underlying conditions or further limited his functioning. Since Givens did not show how explicitly addressing his obesity would restrict his RFC, the ALJ's failure to do so was harmless error. *Hernandez v. Astrue*, 277 Fed.Appx. 617, 624 (7th Cir. 2008); s*ee Proschaka,* 454 F.3d at 737. The court must therefore affirm the ALJ's finding.

> **D.    The ALJ properly assessed Givens's issues regarding concentration, persistence, and pace.**

When assessing Givens's mental RFC, the ALJ found that Givens has "moderate" difficulties with regard to concentration, persistence, and pace. (R. at 269). Because of this, the ALJ limited Givens "to performing unskilled, simple, repetitive tasks which would not [involve] focused attention for more than two hours at a time or involve rapid production pace work." (R. at 270).

Givens contends that the limitation to unskilled, simple, repetitive tasks did not sufficiently account for his moderate difficulties with regard to concentration, persistence, or pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010); *see also Punzio v. Astrue*, 630 F.3d 704, 711 (7th Cir. 2011). As a result, Givens's RFC was flawed, and the VE's testimony could not constitute substantial evidence at step five.

The Seventh Circuit has noted that "the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include them all directly in the hypothetical." *O'Connor-Spinner,* 627 F.3d at 619. The Court also noted that simply restricting a hypothetical individual to "unskilled work" or "simple, repetitive tasks" would not necessarily limit the VE's testimony to only those jobs that appropriately account for the claimant's difficulties regarding concentration, persistence, or pace. *Id.* at 619-20. In most cases, the ALJ should refer "expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *Id.* at 620-21.

This case is distinguishable from *O'Connor-Spinner* because the ALJ did not limit Givens to performing only "simple, unskilled, repetitive tasks. The ALJ referred expressly to Givens's limitations on concentration, persistence, and pace in his hypothetical questions. At the hearing, the ALJ included the following statement in his first hypothetical to the VE:

13

> I'd like you to assume the existence of a hypothetical individual the claimant's age, education, and prior work experience who is restricted to performing sedentary level work . . . with the following additional restrictions: . . . due to a *moderate* level restriction in *concentration, persistence, or pace* the worker would not . . . involve focused attention for more than two hours at one time and which would not involve rapid production paced work . . . .

(R. at 318-19)(emphasis added). The hypothetical contained more information for the VE than a limitation to unskilled, simple, repetitive tasks, and the VE's testimony in response to this hypothetical constitutes substantial evidence of the jobs Givens can do and supports the ALJ's step five determination. *O'Connor-Spinner,* 627 F.3d at 621; Schmidt *v. Astrue,* 496 F.3d 833, 846 (7th Cir. 2007).

Givens also argues that the ALJ limiting him to performing unskilled, simple, repetitive tasks, which would not involve focused attention for more than two hours at a time, is actually no limitation at all because most jobs do not require two hours of concentration at a time. (Pl's Brief at 4). However, Givens provides no authority to support this argument.

Furthermore, at step three, the ALJ took into consideration the March 2011 opinion of examining physician Dr. Jill Christopher ("Dr. Christopher"). (R. at 269). Although Dr. Christopher noted that Givens "may have some difficulty attending, concentrating, and completing simple tasks due to significant depression," she did not find that Givens had any significant restrictions on his ability to perform simple, unskilled work.  (R. at 269, 591). Dr. Christopher found that Givens has no restrictions on his ability to understand, remember, and carry out simple instructions and to make

14

judgments on simple work-related decisions, and only mild restrictions where complex instructions or decisions were involved. (R. at 592). Dr. Christopher's opinion supports the ALJ's finding that Givens was capable of focusing on unskilled, simple, repetitive tasks for at least two hours at a time, notwithstanding Givens's limitations with concentration, persistence, and pace. (R. at 270-72).

Consequently, the ALJ's RFC finding and his hypothetical question to the VE adequately accounted for Givens's moderate limitations with concentration, persistence, and pace.

### E. The ALJ properly evaluated the vocational evidence.

#### 1. Issues regarding the ALJ's step five evaluation.

Relying on the VE's testimony, the ALJ found that Givens could perform the following jobs listed in the Department of Labor *Dictionary of Occupational Titles* (20 C.F.R. Part 404, Subpart P, Appendix 2)("DOT"): inspector/tester (DOT 529.485-010), a security system monitor (DOT 3790.367-010), and a packager/folding machine operator (DOT 731.685-014). (R. at 274). The ALJ also found that due to Givens's "moderate level limitation of concentration, persistence, and pace," he is limited to performing unskilled, simple, repetitive work. (R. at 272-73). Although the positions qualify as "unskilled work,"[9] Givens contends that the jobs of inspector/tester and security system monitor are not consistent with "simple, repetitive work" because they require General

---

[9] Both jobs have a Specific Vocational Preparation score of 2, which qualifies as "unskilled work." 20 C.F.R. § 404.1568(a); *see* DOT 379.367-010, 539.485-010; SSR 00-4p, 2000 WL 1898704, at *3.

15

Educational Development ("GED") reasoning and language levels of three. (Pl's Brief at 7).

A GED reasoning level of three requires that the claimant must be able to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form," and "deal with problems involving several concrete variables in or from standardized situations." *Terry v. Astrue,* 580 F.3d 471, 478 (7th Cir. 2009)(*citing* DOT's App'x C(III)). The Seventh Circuit has held that there is no conflict between a VE's identification of jobs requiring a GED reasoning level of three and an ALJ's finding that a plaintiff had the RFC to perform only "simple, repetitive work". *Id.* at 471.

During his hearing, Givens testified that most of his daily limitations related to physical, as opposed to mental, limitations, although he did state he had a hard time concentrating while watching television. (R. at 269). Furthermore, the medical records in this case indicate that Givens can follow "simple and straight [sic] forward instructions," and that he has no restrictions understanding, remembering, or carrying out simple instructions. (R. at 571, 592). Based on this evidence, the ALJ could have reasonably concluded that Givens has the cognitive abilities to meet the requirements for a GED reasoning level of three.

On the other hand, the requirements for a GED language level of three are somewhat more extensive. DOT App'x C(III).[10] During his hearings, Givens testified that his ability to read is "limited" and "not what it should be" because he cannot understand all of the words he reads. (R. at 312, 462). He also added that he does not read books, and only looks at the pictures in newspapers and magazines. (R. at 312). When asked about the logs he was required to keep when he worked as a truck driver, Givens testified that his logs were sometimes incorrect because he had problems with reading, writing, and spelling. (R. at 313).

SSR 00-4p places an affirmative duty on an ALJ to ensure that the VE's testimony is consistent with the DOT. 2000 WL 1898704, at *4 (Dec. 4, 2000). This duty is two-fold. *Prochaska,* 454 F.3d at 735. First, the ALJ must ask if the VE's testimony conflicts with the DOT. *Id.* If there is an "apparent conflict," the ALJ must obtain "a reasonable explanation for the conflict" before he can rely on that evidence to support a decision on whether an individual is disabled. SSR 00-4p, 2000 WL 1898704, at *2; *Terry,* 580 F.3d at 478; *Prochaska*, 454 F.3d at 735. However, an ALJ's failure to ask the VE if her

---

[10] A GED language level of three requires that the claimant can perform the following tasks:

> "Reading: Read a variety of novels, magazines, atlases, encyclopedias. Read safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work. Writing: Write reports and essays with proper format, punctuation, spelling and grammar, using all parts of speech. Speaking: Speak before an audience with poise, voice control, and confidence, using correct English and well-modulated voice."

17

testimony conflicted with the DOT is harmless unless there actually was a conflict that was "apparent." *Renfrow v. Astrue,* 496 F.3d 918, 921 (8th Cir. 2007); *see also Ketelboeter v. Astrue,* 550 F.3d 620, 625-626 (7th Cir. 2008); *Keys v. Barnhart,* 347 F.3d 990, 994-995 (7th Cir. 2003).

Here, the VE responded affirmatively when the ALJ said he would assume that the VE's testimony was consistent with the DOT unless the VE advised him otherwise. (R. at 317). Because neither Givens nor his attorney identified any conflict at the hearing, Givens would have to show that the conflict was "obvious enough that the ALJ should have picked up on [it] without any assistance." *Terry,* 580 F.3d at 478 (citing *Overman v. Astrue,* 546 F.3d 456, 463 (7th Cir. 2008)). This did not happen in this case. At the hearing, Givens's attorney never questioned the VE about the applicable GED language level of the jobs. In addition, no one asked the VE whether a person with Givens's reading abilities could perform jobs as an inspector/tester or as a security system monitor. Although Givens attended special education classes when he was in school, he was able to finish high school in 2005. The only evidence of Givens's alleged reading difficulties comes from his own testimony at his hearings. Givens's cognitive abilities, as demonstrated by his performance of past relevant work as an over the road truck driver, support the ALJ's conclusion that Givens met the requirements of a GED language level of three. Therefore, any conflict is not so obvious that the ALJ should have pursued the question further.

18

### 2. Issues regarding the VE's testimony.

Givens also claims that the VE's testimony regarding his ability to work as a packager/folding machine operator conflicted with the DOT in two respects. First, he contends that the VE's testimony should not have been relied on by the ALJ because the VE supplied the wrong DOT number for the packager/folding machine operator job, and because the job of packager/folding machine operator is not classified as a sedentary, unskilled job. (Pl's Brief at 8; *see also* DOT p. 749). Second, he argues that the VE's testimony should not have been relied on because the VE testified that 150 of the packager/folding machine operator jobs were available locally, which is not a significant number of jobs.

It appears the VE misidentified the job of toy stuffer (DOT 731.685-014), which is a sedentary, unskilled position, as the job of packager/machine operator (DOT 920.685-078), which requires medium exertion. At the second hearing, the VE testified that a hypothetical person with Givens's RFC could perform *sedentary*, unskilled "packaging and filling machine operation jobs such as [DOT] 731.685-014."[11] (R. at 319). The unskilled toy stuffer position falls within the broader category of "Packaging and Filling Machine Operators and Tenders." *See* DOT 731.685-014 (cross-referencing O*NET 92974). Thus, it logically follows that the VE meant to cite to the less demanding toy stuffer

---

[11] The DOT number 731.685-014 refers to three different occupational titles: (1) "stuffer" (toy-sport equipment); (2) "blower"; or (3) "toy stuffer". DOT 731.685-014.

19

position, and referring to it as packager/machine operator was harmless error.

Finally, at the hearing, the VE testified that there are 150 of the packager/folding machine operator jobs locally. Although Givens argues that this number does not constitute a significant number of jobs, he does not provide any case law to support this assertion. (Pl's Brief at 8). Regardless of whether 150 jobs would constitute a significant number of jobs, the VE testified that an individual with Givens's limitations would be able to perform two other jobs besides the packager/folding machine operator position, so any error is harmless. The evidence in the record supports a finding that the ALJ's reliance on the VE's testimony is not reversible error.

## V.   Conclusion

For the foregoing reasons, the Commissioner's decision that Givens is not disabled is **AFFIRMED.**  Judgment consistent with this Entry shall now ensue.

**SO ORDERED** the 15th day of March, 2013.

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Served electronically on all ECF-registered counsel of record.**